IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-03283-SKC-SBP

JASON RAY CLARK,

    Plaintiff,

v.

PHILIP J. WEISER, *et al*.,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Susan Prose, United States Magistrate Judge**

This matter is before this court on a Motion to Dismiss (ECF No. 29, the "Motion" or "Motion to Dismiss") the complaint filed by pro se Plaintiff Jason Ray Clark ("Plaintiff" or "Mr. Clark"). All Defendants who were not dismissed for lack of timely service (*see* ECF No. 27, Judge Crews' minute order of May 20, 2024) join in the Motion. Defendants are state agencies and officials for the State of Colorado who Mr. Clark sues relating to investigatory and administrative proceedings that resulted in his state securities license being revoked on November 8, 2023.[1] *See* ECF No. 1 ("Complaint" or "Complt.") at 8. Defendants move to

---

[1] Specifically, Mr. Clark names as Defendants: Philip J. Weiser, Attorney General of Colorado; India Kidd-Aaron, Assistant Attorney General of Colorado; Robert Finke, an attorney in the Colorado Attorney General's office, the Colorado Attorney General's Office (the "AG's Office"), the Colorado Division of Securities ("CDS"), and the Colorado Department of Regulatory Agencies ("DORA"). All other Defendants were dismissed for lack of timely service. ECF No. 27.

    For convenience, this court refers to Mr. Weiser, Ms. Kidd-Aaron, and Mr. Finke as the

dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Mr. Clark opposes the Motion. ECF No. 31 ("Resp."). Defendants have replied. ECF No. 33 ("Reply"). For the reasons that follow, this court respectfully **RECOMMENDS** that the Motion be **granted**.

I.     Background

Mr. Clark filed this action pro se on December 13, 2023. *See* Complt.[2] After the court ordered him to file a properly-supported motion to proceed in forma pauperis (or pay the filing fee), Mr. Clark paid the filing fee. ECF No. 5. His case was then drawn to Judge S. Kato Crews and the undersigned magistrate judge in the referral role. ECF No. 8 (Order of January 25, 2024). The following facts are drawn from the allegations in the Complaint, which the court accepts as true at this stage of the proceedings. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

Mr. Clark alleges that CDS examined or investigated himself and his investment firm, Clark Brothers Investments, with respect to regulatory compliance, going back to at least 2021.

---

"State Officials," and the AG's Office, CDS, and DORA as the "State Agencies."
   While the docket reflects Dmitry B. Vilner is both counsel of record for Defendants a "Consol[idated] Defendant" himself. Mr. Vilner is not named as a Defendant and is instead only counsel of record for Defendants. It appears he was added in ECF as a defendant in error when Mr. Clark e-filed a return of service in ECF No. 28. The Clerk's office is requested to remove the reference in the docket to Mr. Vilner as a defendant.

[2] As Mr. Clark's Complaint and Response both reflect, this is not the first or only federal action he has filed concerning these or related facts. This court is aware of ten cases Mr. Clark has filed pro se in this District. *See* Case Nos. 22-cv-03015-SKC-SBP, 23-cv-00191-SKC-JPO, 23-cv-00860-LTB, 23-cv-02166-CNS-SKC, 23-cv-02170-SKC-JPO, 23-cv-03187-LTB, 23-cv-03283-SKC-SBP (this case), 24-cv-00318-LTB, 24-cv-00667-SKC-TPO, and 24-cv-01000-SKC. It appears that except for this case, all of Mr. Clark's cases have already been closed on initial review, dismissed on Rule 12 motions, or stayed pending arbitration.

2

Complt. at 7. At some point, the investigation led to an administrative proceeding, including a hearing before Judge Matthew E. Norwood, an administrative law judge ("ALJ") with the Colorado Office of Administrative Courts. *Id.* at 8 (referencing case number "XY 2022-0001"). *Id*. at 8. On November 8, 2023, the ALJ revoked Mr. Clark's Colorado securities license and the license for his investment firm, which the court refers to here as Mr. Clark's "licenses." Mr. Clark appealed the ALJ's decision to the Colorado Court of Appeals, and that appeal was pending when he filed the Complaint here. *Id*.

Mr. Clark's Complaint hinges on multiple objections to the process that led to the revocation of his licenses. He objects to the manner in which CDS conducted its examination and investigation; to the fact that an ALJ, rather than a jury, heard the case; and to the ALJ's decision generally. *Id.*, *passim*. He asserts that an arbitrator from the Financial Industry Regulatory Authority—who presided over a related arbitration against Mr. Clark's former securities custodian, the Charles A. Schwab Company—made certain findings of fact in favor of Mr. Clark that are pertinent here. *Id*.

Based on these factual allegations, Mr. Clark asserts that all Defendants violated his Seventh Amendment right to a trial by jury, his First Amendment right to "free and unabridged speech against the government and its agencies," and his Fifth and Fourteenth Amendment rights to procedural due process. *Id*. at 9. He further alleges that Defendants violated the Constitution's separation-of-powers and appointments-and-removal clauses. *Id*. He contends that the Supreme Court has found that ALJs "do not have the constitutional authority to make rulings, and that such rulings (i.e. revoking [his] securities licenses) must be tried and decided within the United States [j]udicial system (ergo before a Jury or Judicial Judge)." *Id*. at 9-10. Mr. Clark does not

expressly say whether he sues the State Officials in their official or individual capacities, or both. It appears that he intends to sue them in both capacities. *See, e.g.*, *id*. at 10 (referencing "persons individually responsible" and citing the *Bivens* doctrine, which concerns a limited right to sue certain federal officers in their individual capacities).

After several defendants were dismissed without prejudice due to Mr. Clark's failure to timely serve them, the remaining Defendants filed the Motion on June 3, 2024. ECF No. 29. Mr. Clark filed an overlength response of fifty-five pages without seeking leave to exceed Judge Crews' limit of fifteen pages for such responses.[3] *See* SKC Civ. Practice Standard 10.1(c)(1). In this instance, the court did not strike the noncompliant brief, but Mr. Clark shall take note that if he wishes to exceed the allotted page limits going forward, he must confer and file a motion for leave.

---

[3] Mr. Clark also submitted thumb drives of exhibits that he mentions in his Response. *See* ECF No. 32. But on a Rule 12(b)(6) motion (and Rule 12(b)(1) motions resting on the factual averments in a complaint, like Defendants' Motion does), the court is generally confined to considering the contents of the complaint. "Exceptions to this general rule include the following: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and 'matters of which a court may take judicial notice." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (quotation omitted).

While certain of Mr. Clark's exhibits are from the administrative proceeding and his appeal (and as such, the court could take judicial notice of them, for instance, for dates that filings were made), Mr. Clark presents *all* of his exhibits as "mountains of evidence" in support of his claims. Resp. at 7. This the court cannot do. *See, e.g.*, *id*. at 1291 ("Rule 12(b)(6) motions to dismiss are not designed to weigh evidence"). Mr. Clark's other exhibits do not fall into the permitted categories, and so the court does not consider them in evaluating the Motion to Dismiss.

4

## II. Legal Standards

### A. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), rendering them "duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). The "cases" and "controversies" clause "ensures that the parties before us retain a personal stake in the litigation. As a corollary to this case-or-controversy requirement, there must exist a dispute at all stages of review, not merely at the time the complaint is filed." *Moore v. Harper*, 600 U.S. 1, 14 (2023) (cleaned up). The "[m]ootness doctrine addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *Id*. (quotation marks omitted). Federal courts "lack subject-matter jurisdiction over a case that is moot." *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022). And federal courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

### B. Rule 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020) (internal quotation marks omitted). "A

5

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted). In making this determination, the "court accepts as true all well pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se litigants cannot rely on conclusory, unsubstantiated allegations to survive a Rule 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible").

C.     *Pro Se Pleadings*

In applying the above principles, this court is mindful that Plaintiff proceeds pro se and thus affords his filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and does not act as his advocate, *Hall*, 935 F.2d at 1110, and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *see also Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("*Pro se* status 'does not excuse the obligation of any litigant to comply

6

with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'")
(citation omitted).

III.   Analysis

   A.   Subject Matter Jurisdiction

      1.   Eleventh Amendment Sovereign Immunity

Defendants first argue that all claims must be dismissed because they are entitled to sovereign immunity under the Eleventh Amendment. Under this constitutional provision, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been interpreted to bar any action brought against a state in federal court, including suits initiated by a state's own citizens. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Eleventh Amendment immunity extends to states and state entities deemed "arm[s] of the state[.]" *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977)).

Absent a waiver, states and their agencies are entitled to Eleventh Amendment immunity, regardless of the type of relief sought. *Id.* at 1252-53 (citing *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002)). Colorado has not statutorily waived its Eleventh Amendment immunity. *See Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988). Thus, "[t]he State of Colorado and its entities, such as the Office of the Attorney General of the State of Colorado, are protected by Eleventh Amendment immunity." *Sturgell v. Coffman*, No. 16-cv-01637-GPG, 2016 WL 9443724, at *3 (D. Colo. Sept. 21, 2016), *aff'd,* 689 F. App'x 620 (10th

Cir. 2017) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Supreme Court has also made clear that Congress did not abrogate state sovereign immunity through its promulgation of 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Except to the extent distinguished in *Ex Parte Young,* 209 U.S. 123 (1908), which the court discusses in more detail below, an official capacity claim against an individual employee of an agency is the same as a claim against the agency. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official capacity claim is "to be treated as a suit against the entity"). *See also Hill v. Kemp*, 478 F.3d 1236, 1256-59 (10th Cir. 2007) (discussing the Eleventh Amendment with respect to claims brought against state officials in their official capacities).

This precedent compels this court to conclude that all Defendants—both the agencies and the officials, in their official capacities—"are state agencies entitled to sovereign immunity under the Eleventh Amendment against claims for monetary damages and retrospective injunctive and/or declaratory relief." *San Agustin v. El Paso Cnty.*, No. 18-cv-02646-MEH, 2019 WL 4059167, at *10 (D. Colo. Aug. 28, 2019). *See also Sturgell*, 2016 WL 9443724, at *3 (holding that the Colorado AG's Office is entitled to sovereign immunity under the Eleventh Amendment).

However, under *Ex Parte Young*, claims seeking *prospective* relief against state officials in their official capacities for ongoing violations of federal law are not barred under the Eleventh Amendment.[4] Under this exception, there is "federal jurisdiction over a suit against a state

---

[4] Neither side's briefing addresses *Ex Parte Young*. However, this issue is jurisdictional, and as noted above, the court has an obligation to determine whether it has jurisdiction. "Jurisdiction existing, [the Supreme] Court has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).

8

official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996) (internal quotation marks omitted).

"To determine if the *Ex parte Young* exception applies, the [c]ourt 'need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Gays Against Groomers v. Garcia*, --- F. Supp. 3d ---, No. 24-cv-00913-RMR, 2024 WL 5151143, at *3 (D. Colo. Nov. 27, 2024), *appeal pending* (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002)). *See also Hill,* 478 F.3d at 1259 (analyzing whether an injunctive claim "seeks relief properly characterized as prospective"). Thus, "plaintiffs must show that they are: (1) suing state officials rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief." *Id*. (quoting *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012)). "At this stage of the jurisdictional analysis, the [c]ourt 'should not analyze the merits of the claim.'" *Id*. at *3 n.3 (quoting *Fowler v. Stitt*, 104 F.4th 770, 782 (10th Cir. 2024) (internal quotations and citation omitted)).

Liberally construing Mr. Clark's allegations, he requests reinstatement of his securities licenses. He sues the State Officials in their official capacities because he contends that they were involved in, or responsible for, the proceedings that resulted in those licenses being revoked allegedly in violation of his right to due process. He argues that he should have been, but was

---

Accordingly, this court addresses the *Ex Parte Young* exception sua sponte to ensure that it applies the Eleventh Amendment in accordance with the governing case law.

not, permitted adequate discovery in those proceedings.[5] Without considering the merits of his claims, this court concludes that Mr. Clark seeks prospective relief from the State Officials in what he alleges is an ongoing deprivation of his licenses without due process. Accordingly, the claims against the state officials in their official capacities are subject to *Ex Parte Young*. *See, e.g.*, *Columbian Fin. Corp. v. Bowman*, 768 F. App'x 847, 850-51 (10th Cir. 2019) (noting the court had reversed an earlier decision in the case because *Ex Parte Young* applied where the plaintiff sought a "hearing before an impartial hearing officer after sufficient opportunity for discovery," "which could overturn the insolvency finding and restore the [plaintiff's] charter").[6]

In sum, all of Mr. Clark's claims against the State Agencies (the AG's Office, CDS, and DORA), and his claims against the State Officials, in their official capacities, for money damages and retrospective relief should be dismissed for lack of subject matter jurisdiction because of sovereign immunity under the Eleventh Amendment. But Mr. Clark's claims against the State Officials in their official capacities for *prospective* injunctive relief are subject to the *Ex Parte Young* exception. And of course, Mr. Clark's claims against the officials for monetary damages in their *individual* capacities are not subject to the Eleventh Amendment either. *See, e.g.*, *Lewis v. Clarke*, 581 U.S. 155, 166 (2017) ("Nor have we ever held that a civil rights suit under 42 U.S.C. § 1983 against a state officer in his individual capacity implicates the Eleventh

---

[5] This court assumes without deciding that each of the State Officials has the authority to reinstate Mr. Clark's licenses as he requests in this case.

[6] "Unpublished opinions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A). "[I]f an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, [the Tenth Circuit] allow[s] citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

Amendment"); *Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983 . . . [and t]he Eleventh Amendment does not bar such suits").

Because not all of Mr. Clark's claims are subject to Eleventh Amendment sovereign immunity, this court now turns to Defendants' other arguments concerning subject matter jurisdiction.

### 2. *Younger* Abstention No Longer Applies

At the time the parties briefed the Motion, Mr. Clark's appeal from the administrative decision revoking his licenses was still pending in state court. *See, e.g.*, Complt. at 8 ("This [administrative] case is currently ongoing thr[ough] the appellate process in the Colorado Court of Appeals"); Resp. at 3, 8 (citing Case No. 2023CA2061). Defendants therefore argue that the court should abstain from exercising jurisdiction under what is known as *Younger* abstention, so named for *Younger v. Harris*, 401 U.S. 37 (1971). "*Younger* requires federal courts to refrain from ruling when it could interfere with ongoing state proceedings." *Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 393 (10th Cir. 2016) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)). *Younger* abstention is required when three conditions are satisfied:

> 1. There is an ongoing state proceeding.
> 2. The state court provides an adequate forum for the claims raised in the federal complaint.
> 3. The state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Id*. at 394-95 (internal quotation omitted, quoting inter alia *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999)).

11

However, a few months after the briefing on the Motion was complete, the Colorado Court of Appeals issued its decision in Mr. Clark's appeal from the administrative decision. *See Clark v. Chan*, No. 23CA2061, 2024 WL 4579302 (Colo. App. Oct. 24, 2024) (unpublished opinion).[7] The Colorado Supreme Court has denied Mr. Clark's petition for certiorari. *See Clark v. Chan*, No. 2024SC000738 (Colo. Sup. Ct.), unpublished order of February 24, 2025.

When a state court proceeding that may otherwise call for *Younger* abstention ends while the federal case is pending, "the district court . . . no longer has a need to abstain under *Younger*." *Ziankovich v. Large*, 745 F. App'x 800, 802 (10th Cir. 2018). *See also Columbian Financial*, 811 F.3d at 395 (vacating district court's dismissal of equitable claims on *Younger* grounds and remanding "to the district court so that it can reconsider them without the need to abstain now that the state proceedings have ended"). In both *Ziankovich* and *Columbian Financial*, the Tenth Circuit found it unnecessary to decide whether the end of the state court proceeding formally moots *Younger* and instead remanded the cases for the district court to consider the claims on the merits. Accordingly, this court concludes that because the state court proceeding is no longer pending, *Younger* abstention does not apply here. This court therefore does not reach the questions of whether the second and third requirements for *Younger* abstention would otherwise apply, or whether Mr. Clark has shown that an exception to *Younger*

---

[7] The court may take judicial notice of filings in related cases, "both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). And the court also may take judicial notice of undisputed court documents and matters of public record as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (citation omitted) (noting that under Federal Rule of Evidence 201, judicial notice may be taken "whether requested or not," and "at any stage of the proceeding").

abstention applies.

Defendants also argue the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-1-101 through 120 ("CGIA") applies here, to the extent the Complaint could be liberally read to bring state tort law claims. Motion at 8-9. But Mr. Clark acknowledges that he does not bring any state law claims in this case, and he states that, if Complaint could be understood to bring state law claims, he has abandoned them. Resp. at 48-49. Therefore, as Defendants recognize in their Reply brief, the CGIA does not apply in this case. Reply at 5.

\* ~\* ~ \*

In summary, the court has subject matter jurisdiction only over Mr. Clark's claims against the State Officials in their official capacities for prospective relief and the individual capacity claims for money damages. This court therefore **RECOMMENDS** that all other claims be **dismissed without prejudice** as barred by sovereign immunity under the Eleventh Amendment. *See, e.g.*, *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2019 (dismissal for lack of subject matter jurisdiction is generally without prejudice).

  B.  *Failure to State a Claim for Relief*

The State Officials argue that Mr. Clark has failed to allege their personal participation in any alleged violation of his constitutional rights, entitling them to qualified immunity on his claims for monetary damages and also compelling dismissal of the official capacity claims. Motion at 5-6.

    1.  *Individual Capacity Claims*

To successfully assert a constitutional claim under § 1983, a plaintiff must show that the defendant personally participated in the alleged constitutional violation. *Foote v. Spiegel*, 118

13

F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). This means there must be a direct link between the alleged constitutional violation and the defendant's participation, control, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993); *see also Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("It is particularly important that plaintiffs make clear exactly who is alleged to have done *what* to *whom*, as distinguished from collective allegations.") (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (emphasis in original)).Conclusory allegations of personal participation are insufficient for the claim to survive dismissal. *Gray v. Sorrels*, 744 F. App'x 563, 568 (10th Cir. 2018). And if a plaintiff attempts to plead a constitutional claim against an official based on their supervisory responsibilities, the allegations must plausibly demonstrate (1) personal involvement; (2) a causal connection to the constitutional violation; and (3) a culpable state of mind. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (discussing standards for individual supervisory liability).

The Tenth Circuit has emphasized that the requirement of personal participation for liability under § 1983 is a component of the qualified immunity analysis: "[A]lthough the requirement of personal participation, including the question of supervisory liability, is a component of liability under § 1983 and *Bivens,* we also incorporate it into our qualified-immunity analysis, where we ask whether a clearly established constitutional right has been violated." *Pahls*, 718 F.3d at 1227 (citing *Dodds v. Richardson*, 614 F.3d 1185, 1193-94 (10th Cir. 2010)). And so to make out a viable § 1983 claim, a plaintiff "must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed

supervisory responsibility, that violated their clearly established constitutional rights." *Id.* at 1228 (citing *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)). "Failure to make this showing both dooms plaintiffs' § 1983 . . . claims and entitles defendants to qualified immunity." *Id.*

The Tenth Circuit likewise has made clear that "qualified immunity 'represents the norm' in suits against public officials." *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 814 (10th Cir. 2022) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). Officials sued in their individual capacities are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012)). "Clearly established" means that, at the time of the challenged conduct, "the contours of a right are sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (emphasis added). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby*, 583 U.S. at 63 (quoting *al–Kidd*, 563 U.S. at 741). The rigorous qualified immunity standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (for the law to be "clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains.") (quotation omitted).

Under these demanding standards, Mr. Clark has failed to overcome the State Officials'

assertion of qualified immunity.

First, Mr. Clark's allegations fail to link the asserted constitutional violations to any specific action taken by Mr. Weiser, Ms. Kidd-Aaron, or Mr. Finke, and so fail to plausibly demonstrate the fundamental requirement of personal participation on the part of each of these officials. The crux of Mr. Clark's claims appears to be that no one at CDS or DORA investigated the facts before notifying his customers that they were examining him and his firm for moving client funds without authorization. This allegedly caused a cascading chain of events in which Mr. Clark first lost his custodian arrangement with Charles Schwab & Co., and then lost the clients whose investments he had managed. Complaint at 7-11. But even liberally construed, these allegations do not plausibly indicate that State Official personally participated in an alleged constitutional violation. Indeed, Mr. Clark's are essentially meaningless, undifferentiated among Defendants as they are and without supporting facts plausibly showing what actions each State Official took that allegedly violated his rights. Put simply, his pleading fails to "make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1249-50 (emphasis in original); *cf. Iqbal*, 556 U.S. at 678 (to survive a motion to dismiss, a pleading must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Neither do Plaintiff's allegations suffice to plausibly allege personal participation against any State Official based on their supposed supervisory roles, assuming that is his intention. "[T]here is no concept of strict supervisor liability under section 1983," *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996), nor does § 1983 create a cause of action against government officials

16

or municipalities based on a respondeat superior theory. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*") (collecting cases). Still, "in situations where an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise, the supervisor may be personally liable." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)) (cleaned up).

Here, Mr. Clark's pleading to link any State Official with actions plausibly establishing a constitutional violation. He has not pleaded facts plausibly indicating how any State Official promulgated, created, implemented, or utilized a policy or practice that caused a deprivation of his rights. *See Dodds*, 614 F.3d at 1195. Neither has he pleaded any facts allowing this court reasonably to infer the existence of the "'requisite causal connection'"—i.e., that any State Official "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights"—or that any State Official "acted knowingly or with 'deliberate indifference' that a constitutional violation would occur." *Id.* (cleaned up).

Next, turning to the two prongs of his "heavy two-part burden" to overcome qualified immunity, *see, e.g.*, *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014), Mr. Clark's allegations do not plausibly show that the personal actions of any of the State Officials violated any constitutional right he claims was violated. Neither has he met his burden to identify Supreme Court or Tenth Circuit authority other weighty compelling precedent, existing at the

time of the alleged conduct, that would have put "every reasonable official" in the State Officials' positions on notice "beyond debate" that what they were doing ran afoul of the Constitution. *al-Kidd*, 563 U.S. at 741. Having failed to point to any pertinent precedent at all—let alone with the required precision to render the law clearly established—Mr. Clark has failed to meet his burden on the clearly established law prong.

Because Mr. Clark has failed to overcome the State Officials' assertion of qualified immunity, the court respectfully **RECOMMENDS** that the claims for monetary damages against those officials be **dismissed with prejudice**.[8]

### 2. Official Capacity Claims

Mr. Clark also has sued the State Officials in their official capacities. As the court noted earlier, a suit against an individual in his official capacity is akin to a suit against the governmental entity itself, *see Kentucky v. Graham*, 473 U.S. at 165-66, which is known as a "*Monell*" claim, after *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See also* Motion at 3. Therefore, "municipal-liability cases apply." *Heidel v. Mazzola*, 851 F. App'x 837, 840 (10th Cir. 2021) ("The Estate's claim against Sheriff Mazzola in his official capacity is equivalent to a suit against a governmental entity; thus, our municipal-liability cases

---

[8] *See, e.g.*, *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (instructing district court to dismiss based on qualified immunity "with prejudice"); *Lybrook v. Members of the Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1341-42 (10th Cir. 2000) (affirming district court order granting motion to dismiss with prejudice on qualified immunity grounds); *Vreeland v. Olson*, No. 20-cv-02330-PAB-SKC, 2021 WL 4237269, at *5 n.7 (D. Colo. Sept. 16, 2021) ("The Court will dismiss the claim against Olson and Reed [brought by a pro se plaintiff] with prejudice because they are entitled to qualified immunity); *McCrary v. Jones*, No. CIV-13-573-M, 2015 WL 873641, at *6 (W.D. Okla. Feb. 27, 2015) (dismissing claim with prejudice where defendant was entitled to qualified immunity).

apply.") (citing *Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015)). To state a plausible claim against the State Officials on this theory, Mr. Clark was obliged to allege facts plausibly showing "(1) an official government policy or custom, (2) that cause a constitutional injury, and (3) requisite state of mind." *Id.* (citing *Schneider*, 717 F.3d at 769).

Mr. Clark has pleaded no facts plausibly indicating that he can satisfy these elements as to each of the State Officials. And, more fundamentally, he has not otherwise alleged a plausible constitutional violation because of a lack of allegations establishing the State Officials' personal participation. Therefore, the actions of the State Officials do not provide the required nexus required for municipal liability under § 1983. *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104-05 (10th Cir. 2009) ("Since the officers were not alleged sufficiently to have committed a constitutional violation, they could not provide the nexus required for municipal liability under § 1983.") (citing *Graves v. Thomas,* 450 F.3d 1215, 1218 (10th Cir. 2006)); *see also, e.g.*, *Maddox v. Elder*, No. 21-cv-00235-RMR-MEH, 2022 WL 22860461, at *5 (D. Colo. Mar. 29, 2022), *recommendation adopted*, 2022 WL 22860462 (D. Colo. June 15, 2022) ("a prerequisite to a *Monell* claim is an underlying constitutional violation") (collecting cases).

Mr. Clark's official capacity claims against the State Officials must necessarily fail, compelling the court to respectfully **RECOMMEND** that the official capacity claims against the State Officials be **dismissed with prejudice**. Allowing Mr. Clark an opportunity to amend his official capacity claims would be futile; because his individual capacity claims should be dismissed with prejudice on qualified immunity, Mr. Clark is unable to plead any officer violated the constitution, as required to support an official capacity claim. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("dismissal with prejudice is appropriate where a

complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile," citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)).

IV.     Conclusion

For each of the foregoing reasons, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss (ECF No. 29) be **granted**. This court further **RECOMMENDS** that the claims over which this court lacks subject matter jurisdiction be **dismissed without prejudice** and that the claims against the State Officials be **dismissed with prejudice**.[9]

DATED: February 27, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[9] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").